# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL RANDOLPH,** | : | No. 1:06-CV-0901 |
| | : | |
| Petitioner | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JEFFREY BEARD,** Commissioner, | : | **THIS IS A CAPITAL CASE** |
| **Pennsylvania Department of** | : | |
| **Corrections; LOUIS B. FOLINO,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at Greene;** | : | |
| **and FRANKLIN J. TENNIS,** | : | |
| **Superintendent of the State** | : | |
| **Correctional Institution at** | : | |
| **Rockview,** | : | |
| | : | |
| Respondents | : | |

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Presently before the court is Petitioner Samuel Randolph's motion for discovery (Doc. 87), respondents' opposition thereto (Doc. 90), and petitioner's reply (Doc. 97). Following oral argument on the motion, and for the reasons set forth below, the court will grant in part and deny in part the motion for discovery (Doc. 87).

Following a jury trial, petitioner was convicted of first-degree murder and related charges in the Court of Common Pleas of Dauphin County, Pennsylvania, on May 14, 2003. The facts underlying petitioner's conviction, as related by the Pennsylvania Supreme Court, are as follows:

> In the early morning hours of September 1, 2001, at Roebuck's Bar in Harrisburg, an argument began between appellant and Alister Campbell, which led to a fight involving appellant, Gary Waters, and Thomas Easter; appellant was thrown out of the bar. Early the following morning, appellant drove past the bar, exchanged words with Campbell, Waters, and Easter, drove away, and then returned in a different vehicle. Appellant opened fire in the direction of Campbell and Easter, grazing Waters' hand. Ronald Roebuck, the owner of the bar, identified appellant as the shooter. In the late evening of September 2, while Campbell, Easter, and Waters were parked on Maclay Street in Harrisburg, appellant pulled up beside them and opened fire, striking Waters' back and grazing his head, thigh, and buttocks. Waters and his girlfriend, Syreeta Clayton, were able to identify appellant. On September 19, at Todd and Pat's Bar in Harrisburg, appellant opened fire, striking Campbell in the chest, arm, and leg. He seriously injured several others and killed Easter and another individual, Anthony Burton. Several witnesses identified appellant as the shooter.

Commonwealth v. Randolph, 873 A.2d 1277, 1280 (Pa. 2005). Petitioner was sentenced to death on May 15, 2003, and his sentence was formally imposed on July 10, 2003. The Pennsylvania Supreme Court affirmed petitioner's convictions and death sentences on September 6, 2005. See id. The United States Supreme Court denied certiorari on April 3, 2006. Randolph v. Pennsylvania, 547 U.S. 1058 (2006).

On September 27, 2006, petitioner filed a pro se PCRA petition in the Dauphin County Court of Common Pleas. A counseled, amended PCRA petition was filed on February 13, 2007.[1] Prior to filing that counseled amended PCRA petition, petitioner filed, through counsel, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 10), along with a motion to stay the federal habeas proceedings pending exhaustion of state court remedies of several of his

---

[1] PCRA counsel filed several amendments to the PCRA petition on the following dates: May 1, 2007, May 14, 2007, June 14, 2007, August 22, 2007, February 11, 2008, and November 13, 2008.

habeas claims, (Doc. 11). By order issued February 8, 2007, these federal proceedings were stayed pending petitioner's exhaustion in state court. (Doc. 13.)

Further, during the course of his PCRA proceedings, petitioner filed a motion for discovery on May 14, 2007 in state court. (Doc. 82, R.R. Vol. V, Ex. 45.) The Commonwealth opposed the motion on procedural grounds. (Id. at Ex. 46.) Rather than ruling on the motion, the PCRA court issued an order instructing petitioner to file a supplemental amendment to his motion for discovery demonstrating: (a) good cause for the requests, and (b) whether the requested items exist or had been previously provided. Petitioner filed the supplemental amendment on August 22, 2007. The Commonwealth did not respond. Petitioner filed a second motion for discovery on February 11, 2008. (Id. at Ex. 53.) The Commonwealth responded to that motion on May 28, 2008, arguing the requests were either: (1) not relevant or (2) related to items that had already been disclosed. (Id. at Ex. 54.)

Prior to disposition of the discovery motions, on May 18, 2009, there was an altercation between petitioner and correctional officers at SCI-Greene which resulted in injury to petitioner. On July 1, 2009, petitioner wrote a letter to Judge Hoover indicating that he wished to forego state post-conviction review. After receiving briefing from the parties and conducting a hearing on petitioner's mental capacity to withdraw his PCRA claims, the Court of Common Pleas of Dauphin County issued an order deeming petitioner's PCRA petition withdrawn on February 13, 2013. The court did not rule on petitioner's discovery motions. Thereafter, on May 13, 2013, petitioner's habeas proceedings before this court were reactivated. (Doc. 76.)

On October 4, 2013, petitioner filed the instant motion for discovery. (Doc. 87.) After responsive and reply briefing were filed, oral argument on the motion

was held on October 2, 2014.² (See Doc. 100.)  In his motion, petitioner asks the court to permit him to conduct discovery in connection with Claims I and III of his habeas petition.  In Claim I, petitioner asserts that "as a result of court error, police and prosecutorial misconduct, and ineffective assistance of counsel, compelling and substantial evidence of petitioner's innocence was not presented to the jury in violation of petitioner's Sixth, Eighth and Fourteenth Amendment rights."  (Doc. 10.)  In Claim III, petitioner claims he was denied his right to counsel of choice at trial in violation of the Sixth, Eighth and Fourteenth Amendments.  (Id.)  As to

---

² At oral argument, the court addressed two preliminary matters prior to hearing argument on the items requested for discovery. (Doc. 115, Notes of Testimony, Oral Argument, 10/02/2014, at 3-4) ("Oral Argument NT").  First, the court acknowledged its involvement in two federal criminal cases of witnesses who are now the subject of part of petitioner's discovery requests: United States v. Alister Campbell, Crim. No. 1:03-CR-00193 (M.D. Pa.) (Conner, J.), and United States v. Donald Roebuck, Crim. No. 1:03-CR-00172 (M.D. Pa.) (Conner, J.).  (Oral Argument NT 3-4.)  The parties agreed that the court's involvement in these cases does not provide any basis for disqualification of the court.  (Id.)  Second, the court addressed respondents' argument that petitioner is not entitled to discovery at all on the basis that he cannot assert his claim of actual innocence in support of the miscarriage of justice exception to procedural default.  (Id. at 4-6.)  Citing controlling language from the United States Supreme Court's decision in Edwards v. Carpenter, 529 U.S. 446, 451 (2000),

> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. We therefore require a prisoner to demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim.  The one exception to that rule, not at issue here, is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice

Id. (quotations and citations omitted), the court concluded that petitioner should be able to pursue his gateway claim of actual innocence in support of the miscarriage of justice exception to procedural default.  (Oral Argument NT 4-6.)

4

discovery, in his motion petitioner makes the following requests, related to his gateway claim of actual innocence and claim that he was denied his counsel of choice:

>    A.  Petitioner should be granted discovery regarding Quendell Oliver and his associates.
>
>    B.  Petitioner should be granted discovery regarding Ronald Roebuck.
>
>    C.  The Court should grant petitioner access to discovery regarding investigators Lau and Carter, and Officer Heffner.
>
>       1.  Donald Roebuck, Heath Wells, and Sean Sellers
>       2.  Alistair Campbell, Gary Waters, Syreeta Clayton
>
>    D.  This Court should grant petitioner access to discovery regarding Eddie Capers.
>
>    E.  This Court should grant petitioner access to any evidence to which he is entitled under Brady v. Maryland.

(Doc. 87.)  Petitioner claims that his trial counsel failed to develop and to present readily available evidence demonstrating that others may have committed the murders and, had he been provided with counsel of his choice at trial, such evidence would have been developed and presented to the jury.  (See Doc. 83.)  Further, petitioner asserts that the requested discovery is necessary here because the state court process did not afford him the opportunity to develop this information sought through discovery.  (Doc. 87.)

At oral argument, petitioner's counsel highlighted three areas in his discovery requests.  (See Oral Argument NT 20-37.)  First, petitioner requests documents relating to the investigation, including any forensic reports, of Quendell Oliver and his associates as potential suspects in the murders at Todd and Pat's Bar.  (Id. at 21.)  Petitioner also would like to inspect and to conduct independent DNA testing on items of clothing seized from Quendell Oliver's home during a

5

September 22, 2001 search. (Id. at 21-22.) Second, petitioner requests any files or documentation in the possession of the Harrisburg Police Department and Dauphin County District Attorney's office regarding arrests or charges for Ronald Roebuck, limited to a two-year period preceding petitioner's trial and throughout the trial. (Id. at 29-31.) Petitioner also requests informant status or cooperating witness information with respect to Ronald Roebuck, Alister Campbell, Gary Waters, and Syreeta Clayton. (Id. at 29-30; 32-35.) In addition, petitioner requests any information that the Commonwealth has relating to Eddie Capers, specifically, whether he was viewed as a suspect and whether he was interviewed. (Id. at 35-36.) Petitioner also makes a general request for any Brady material relating to all of these witnesses. (Id. at 36-37.) Third, petitioner requests documents, including disciplinary reports, complaints, and any other internal affairs files pertaining to the investigating officers in petitioner's case, specifically Investigators Lau and Carter and Officer Heffner, limited to a two-year period preceding petitioner's trial and a limited period post-dating the trial with respect to any incident that may have pre-dated the arrest and prosecution of petitioner. (Id. at 31-32.)

The Commonwealth responded to each of these requests at oral argument. Initially, the Commonwealth agreed that, once a determination is made that the clothing items seized from Quendell Oliver's home are still in the possession of either the District Attorney's office or the Harrisburg police, it would send such seized items to the National Medical Services Laboratory ("NMS"), located in Willow Grove, Pennsylvania, for additional DNA testing. (Id. at 39-40.) In addition, the Commonwealth stated that it had already provided all statements and information about Eddie Capers, Gary Waters, Syreeta Clayton, Alister Campbell, and Ronald Roebuck to petitioner, to the extent that they had such statements and information at the time of the events surrounding this case. (Id. at 40-41.) This

information also included any Brady material. (Id. at 40.) The Commonwealth stated that, even after trial, any additional information discovered was promptly disclosed to petitioner. (Id.) As to the personnel records of Investigators Lau and Carter and Officer Heffner, the Commonwealth asserted that such records were not in their control, and directed petitioner's counsel to the Human Resources representative of the Harrisburg Police Department. (Id. at 41-42.) The Commonwealth also argued that the informant status of the identified witnesses is state court privilege and is not relevant to petitioner's case. (Id. at 42.) Finally, the Commonwealth contended that discovery with regard to the interaction of certain witnesses with the federal investigative authorities was not relevant. (Id. at 44-45.)

It is axiomatic that a habeas petitioner must show "good cause" in order to conduct discovery. See Rules Governing § 2254 Cases, Rule 6(a), 28 foll. § 2254 ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."). A showing of good cause is completed "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also Payne v. Bell, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) ("Petitioner need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition."). According to the United States Court of Appeals for the Third Circuit, good cause is established "if a petitioner can point to specific evidence that might be discovered that would support a constitutional claim." Marshall v. Hendricks, 103 F. Supp. 2d 749, 760 (D.N.J. 2000) (citing Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994)). The discovery devices available under Rule 26(a) of the Federal

7

Rules of Civil Procedure include depositions, production of documents, other physical material and electronically stored information, physical and mental examination, written interrogatories, and permission to enter upon land or other property for inspection or other purposes. Fed. R. Civ. P. 26(a). See also Fed. R. Civ. P. 27-32 (depositions), Rule 33 (interrogatories), Rule 34 (production of documents, other physical materials, electronically stored information, and entry upon land for inspection), Rule 35 (physical and mental examinations), and Rule 36 (requests for admissions).

Rule 6(a) of the Rules Governing § 2254 Cases ("Rules Governing Habeas Cases") affords district court judges considerable discretion as to discovery. See Bracy, 520 U.S. at 909 ("Although, given the facts of this particular case, it would be an abuse of discretion not to permit any discovery, Rule 6(a) makes it clear that the scope and extent of [habeas corpus] discovery is a matter confided to the discretion of the District Court"). The Advisory Committee Note to Rule 6(a) reaffirms a district court's "duty" under Harris v. Nelson, supra, to order discovery when a petitioner's specific allegations suggest that full development of the facts may enable the petitioner to demonstrate a right to relief.[3] Rule 6 warrants discovery "when[ever] it would help the court make a reliable determination with respect to the petitioner's claim." Herrera v. Collins, 506 U.S. 390, 444 (1993) (Blackmun, J., dissenting on other grounds). See also Payne, 89 F. Supp. 2d at 970.

In the instant case, petitioner has demonstrated good cause for much of the discovery requested in connection with Claims I and III of his habeas petition. With respect to the discovery requests, the individuals identified in those requests provided important information as to petitioner's involvement in the murders.

---

[3] See Advisory Committee Note to Rule 6 of the Rules Governing § 2254 Cases (stating that Rule 6 is "consistent" with Harris' discussion of the district court's duty to order discovery in certain circumstances).

Petitioner has now identified specific items that may show that compelling and substantial evidence of petitioner's innocence was not presented to the jury, and that petitioner's trial counsel was ineffective for failing to develop and to present such evidence. Thus, these discovery requests are reasonably crafted to support petitioner's claims of denial of his constitutional rights, including those relating to due process and effective assistance of counsel, in connection with habeas Claims I and III. In sum, because it is within the court's discretion to grant discovery requests, and because much of the requested discovery may serve to aid the court in making a reliable determination with respect to petitioner's Claims I and III, the court will grant in part and deny in part petitioner's motion for discovery. (Doc. 87.)

ACCORDINGLY, this 13th day of November, 2014, it is hereby ORDERED that petitioner's motion for discovery (Doc. 87) is GRANTED in part and DENIED in part as follows:

1. The motion for discovery (Doc. 87) is GRANTED to the extent that, at their earliest convenience, the parties shall meet and confer regarding petitioner's discovery requests (see Doc. 87) in order to determine what has already been disclosed, what materials the Commonwealth intends to turn over to petitioner, and what, if any, materials must be reviewed by the court *in camera*. If a determination is made to provide discovery materials to the court for *in camera* review, such materials shall be provided forthwith.

2. Upon confirming the location of clothing items seized from Quendell Oliver's home during a September 22, 2001 search, the Commonwealth shall arrange for the transportation of said items to the National Medical Services Laboratory in Willow Grove, Pennsylvania, for DNA testing at a time convenient to the parties.

3. Petitioner's counsel may pursue discovery related to the personnel files of Investigators Lau and Carter and Officer Heffner, as well as information on the informant or cooperating witness status of the relevant identified witnesses, (see Doc. 87), by service of a subpoena upon the Harrisburg Police Department, subject, however, to the Department's right to file a motion for a protective order.

4. Petitioner's request for documentation arising out of the investigation of the murder of Marcus Carroll in January 2000 (see Doc. 87-1 ¶ 4) is WITHDRAWN.

5. Petitioner's request for discovery relating to the interaction of certain witnesses with the federal investigative authorities is DENIED.

6. Petitioner shall file a notice with the court on or before December 10, 2014, and every thirty (30) days thereafter as necessary, as to the status of the discovery requests.

7. The petition for writ of habeas corpus (Doc. 10) is STAYED pending the outcome of discovery, or until further order of court.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania