IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL RANDOLPH**, | : | No. 1:06-CV-0901 |
| Petitioner | : | (Chief Judge Conner) |
| v. | : | |
| **JEFFREY BEARD**, Commissioner, Pennsylvania Department of Corrections; **LOUIS B. FOLINO**, Superintendent of the State Correctional Institution at Greene; and **FRANKLIN J. TENNIS**, Superintendent of the State Correctional Institution at Rockview, | : | THIS IS A CAPITAL CASE |
| Respondents | : | |

**MEMORANDUM**

In his amended petition for writ of habeas corpus and consolidated memorandum of law, petitioner Samuel Randolph presents a proffer in support of his request for an evidentiary hearing on each of his fifteen claims for habeas corpus relief. (Doc. 182.) After careful consideration, the Court will grant Randolph's request for a hearing on his claims in a manner described herein.

**I.   Background**

In May 2003, Randolph was tried before a jury in the Court of Common Pleas of Dauphin County, Pennsylvania, for the murders of two individuals. Allen C. Welch, Esquire, was his court-appointed attorney, and Anthony Thomas, Esquire, was appointed as counsel to assist Mr. Welch. The jury convicted Randolph of two counts of first-degree murder, two counts of criminal contempt, three counts of aggravated assault, two counts of firearms violations, reckless endangerment, and conspiracy to commit murder.

Following the verdict, but prior to the sentencing proceeding, Randolph stated that he wished to forego the presentation of mitigating evidence. After an overnight recess, Randolph reiterated his desire to waive the presentation of mitigating evidence and requested the ability to proceed *pro se*. After a brief recess, the trial court granted Randolph's request to proceed *pro se* but retained standby counsel. The jury found two aggravating circumstances and no mitigating circumstances and sentenced Randolph to death on each murder conviction.

At the formal sentencing hearing held on July 10, 2003, Randolph was represented by Samuel Stretton, Esquire. The trial court formally imposed the death sentences and sentenced Randolph to a term of years on the remaining claims. Subsequently, Mr. Stretton filed a series of motions for a new trial based on newly-discovered evidence and the prosecution's failure to disclose material exculpatory evidence. After conducting a hearing limited to only the Brady issue, the trial court denied the motions on November 18, 2003.

After Randolph's counseled post-trial motions were denied by the trial court, Mr. Stretton filed a direct appeal to the Supreme Court of Pennsylvania. The Supreme Court affirmed his convictions and sentences on May 16, 2005, Commonwealth v. Randolph, 873 A.3d 1277 (Pa. 2005), and the United States Supreme Court denied certiorari, Randolph v. Pennsylvania, 547 U.S. 1058 (2006).

In September 2006, Randolph filed in state court a *pro se* petition for collateral relief under Pennsylvania's Post-Conviction Relief Act ("PCRA), 42 Pa. Cons. Stat. §§ 9541 *et seq*. Counsel from the Federal Community Defender for the Eastern District of Pennsylvania filed an amended PCRA petition in February 2007.

2

After amending the petition several times, the latest PCRA petition raised thirteen claims for relief. During this time, counsel also filed two discovery motions.

In December 2008, the PCRA court conducted a status conference to identify and clarify Randolph's issues for presentation at an evidentiary hearing. Following that conference, Randolph filed a supplemental certification of witnesses, which included Assistant District Attorney Francis Chardo as an additional witness in support of his PCRA petition. On February 9, 2009, Randolph filed a motion to recuse the Dauphin County District Attorney's Office and supplemented his witness certification to include Dauphin County District Attorney Edward Marsico. On March 24, 2009, Randolph filed a motion for summary relief.

On May 18, 2009, there was an altercation between Randolph and several correctional officers at SCI-Greene that resulted in Randolph's hospitalization. After the altercation, in July 2009 Randolph wrote a letter to the state court indicating his desire to waive state post-conviction review. For the following three and a half years, the parties litigated issues related to Randolph's sustained injuries and his desire to waive state post-conviction review. Specifically, in response to Randolph's desire to waive PCRA review, the PCRA court appointed Heidi Eakin, Esquire, to represent Randolph, and the Federal Community Defender Office withdrew from the state court proceedings. On February 13, 2013, the PCRA court issued an order accepting Randolph's withdrawal from state post-conviction review proceedings. As a result, the state court did not make any substantive ruling on any post-conviction claim, nor did it rule on Randolph's discovery motions, summary judgment motion, or recusal motion.

3

Prior to his PCRA withdrawal, on February 5, 2007, Randolph filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended on April 3, 2017. (Doc. 182.) He argues that the proceedings against him were infected with federal constitutional error and that he is entitled to a new trial or, at a minimum, a new sentencing hearing. In support, he presents the following claims for relief:

> Claim I. As a Result of Court Error, Police and Prosecutorial Misconduct, and Ineffective Assistance of Counsel, Compelling and Substantial Evidence of Mr. Randolph's Innocence Was Not Presented to the Jury in Violation of Petitioner's Sixth, Eighth and Fourteenth Amendment Rights.
>
> Claim II. As a Result of Court Error, Prosecutorial Misconduct and Ineffective Assistance of Counsel, the Admission of Alister Campbell's Preliminary Hearing Testimony Violated Mr. Randolph's Sixth, Eighth and Fourteenth Amendment Rights.
>
> Claim III. Mr. Randolph was Denied his Right to Counsel in Violation of the Sixth, Eighth and Fourteenth Amendments.
>
> Claim IV. Mr. Randolph Received Ineffective Assistance of Counsel at Trial in Violation of the Sixth, Eighth and Fourteenth Amendments.
>
> Claim V. Mr. Randolph is Entitled to Relief Because the Trial Court Precluded Him and His Counsel from Being Present During Communications with the Jury Regarding Possible Outside Influences, in Violation of the Sixth, Eighth and Fourteenth Amendments.
>
> Claim VI. As a Result of Court Error and Ineffective Assistance of Counsel, Jurors Who Were Biased and Incapable of Rendering a Fair and Impartial Verdict were Not Dismissed, in Violation of Mr. Randolph's Sixth, Eighth and Fourteenth Amendments.
>
> Claim VII. As a Result of Juror Misconduct, Petitioner's First, Sixth, Eighth and Fourteenth Amendment Rights Were Violated.
>
> Claim VIII. Petitioner is Entitled to a New Sentencing Proceeding Because His Waiver of Counsel at the Penalty-Stage of Trial was Not

Knowing, Voluntary, and Intelligent, in Violation of his Rights Guaranteed by the Sixth, Eighth, and Fourteenth Amendments.

Claim IX. Trial Counsel was Ineffective in Failing to Investigate, Prepare, and Develop Mitigating Evidence, Resulting in the Deprivation of Petitioner's Sixth, Eighth and Fourteenth Amendment Rights.

Claim X. Petitioner is Entitled to a New Sentencing Hearing Because the Court Did Not Instruct the Sentencing Jury That a Capital Defendant Who is Sentenced to Life in Prison is Ineligible for Parole.

Claim XI. Petitioner Should be Afforded a New Trial and Sentencing Hearing Because the Reasonable Doubt Instruction Violated Petitioner's Sixth, Eighth and Fourteenth Amendment Rights.

Claim XII. Petitioner is Entitled to a New Sentencing Hearing Because the Court's Instructions Erected Unconstitutional Requirements that the Defense Mitigating Evidence had to Have Both a Factual Nexus to the Offense and Meet a Qualitative Threshold Before the Jury Could Give Effect to It as a Reason to Spare Petitioner's Life.

Claim XIII. Petitioner is Entitled to Relief from His Death Sentence Because the Jury Improperly Applied the (D)(7) Aggravating Circumstance After Receiving Defective Instructions from the Court, in Violation of the Sixth, Eighth and Fourteenth Amendments.

Claim XIV. Mr. Randolph's Death Sentence is Illegal Because, as a Result of Trial Court Error, the Jury was Given Improper Instructions as to the Existence of Aggravating Factors in Reaching its Determination in Violation of Pennsylvania's Capital Sentencing Statute, and the Fifth, Eighth and Fourteenth Amendments.

Claim XV. Petitioner is Entitled to Relief Because of the Cumulative Prejudicial Effect of the Errors in This Case.

(Doc. 182.) Of these fifteen claims, in the state courts Randolph exhausted only Claims III and Claim VIII and partially exhausted Claim I. (See id.); see also Randolph, 873 A.2d 1277 (Pa. 2005).

In addition to presenting the fifteen claims for habeas relief in his federal habeas petition, Randolph has also set forth a proffer in support of his request for an evidentiary hearing on those fifteen claims. (Doc. 182 at 27-89.) The proffer identifies extensive additional evidence he would introduce to support his habeas claims, including the following, as characterized by Randolph:

> A. Counsel's Failure to Carry Out his Responsibilities and the Resulting Conflict between Mr. Randolph and Counsel.
>
> B. The Court's Rejection of Mr. Stretton's Entry of Appearance and Denial of His Motion for Continuance.
>
> C. Mr. Stretton's Post-Trial Entry of Appearance and Representation of Mr. Randolph.
>
> D. The Weaknesses in the Commonwealth's Case.
>
> E. Evidence of Others With Motive, Means and Opportunity to Commit the Murders.
>
> F. Evidence Discrediting the Purported Identifying Eyewitnesses to the Todd and Pat's Bar Incident.
>
> G. Evidence That the Only Purported Identifying Eyewitness to the Roebuck's Bar Incident Was a Police Informant, and That His Account Was Disputed by Other Witnesses Who Were Prevented from Testifying by Police Coercion.

(Doc. 182.)

## II. Discussion

The general rule concerning habeas evidentiary hearings was set out, before AEDPA, in Townsend v. Sain, 372 U.S. 293 (1963).[1] Except as modified by AEDPA, "[t]hat basic rule has not changed." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Under Townsend, an evidentiary hearing is mandatory

> [i]f (1) the merits of the factual dispute were not resolved in the state hearing (2) the state factual determination is not fairly supported by the record as a whole; (3) the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend, 372 U.S. at 313. Moreover, Townsend leaves intact the district court's discretion to conduct an evidentiary hearing in other circumstances.

After AEDPA took effect in 1996, even if an evidentiary hearing would ordinarily be required or at least discretionary, AEDPA imposed several limitations on the authority of the federal court to conduct such a hearing. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." Schriro, 550 U.S. at 474 (citing Mayes v. Gibson, 210 F.3d 1284, (10th Cir. 2000) ("Whether [an applicant's] allegations, if proven, would entitle him to habeas relief is a question governed by [AEDPA].")).

---

[1] Townsend was overruled by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992) to the extent that Townsend applied a "deliberate bypass" standard for excusing failure to develop a material fact in state court, adopting in its place the standard of "cause and prejudice." That portion of Keeney has since been superseded by the adoption of 28 U.S.C. § 2254(e)(2). See Williams v. Taylor, 529 U.S. 420, 434 (2000).

7

More specifically, and as it pertains to this discussion, a habeas court must consider the prohibition on evidentiary hearings in 28 U.S.C. § 2254(e)(2). Under this section, a habeas court is barred from holding an evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, see Williams v. Taylor, 529 U.S. 420, 429-30 (2000); or the petitioner satisfies the criteria set forth in § 2254(e)(2)(A) and (B).[2] See also Goldblum v. Klem, 510 F.3d 204, 220 (3d Cir. 2007) (under AEDPA, except for the allowances provided in § 2254(e)(2), if a state prisoner "has developed the factual basis of his claims in the state court, he is not entitled to an evidentiary hearing" in federal court).

Importantly, however, § 2254(e)(2) is limited to evidentiary hearings on "a claim" and does not apply to other relevant evidentiary matters, *e.g.*, establishing cause and prejudice or a miscarriage of justice to excuse a procedural default. See Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014) (a "federal court's determination

---

[2] Section 28 U.S.C. § 2254(e)(2) provides as follows:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
    (A) the claim relies on –
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

8

of whether a habeas petitioner has demonstrated cause and prejudice . . . is not the same as a hearing on a constitutional claim for habeas relief"); Holloway v. Horn, 355 F.3d 707, 716 (3d Cir. 2004) ("it is within a District Court's authority to grant a hearing on a petitioner's ability to establish cause to excuse a procedural default, and therefore § 2254(e)(2) is inapplicable to those hearings") (citing Cristin v. Brennan, 281 F.3d 404, 412-13 (3d Cir. 2002) ("We conclude that the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level")). The decision to hold an evidentiary hearing on excuses for procedural default is within the discretion of the district court, regardless of whether the petitioner was diligent in developing facts relating to "cause and prejudice." Cristin, 281 F.3d at 418-19.

In the present case, Randolph only exhausted all or part of three of his federal habeas claims in the state courts. In support of his request for an evidentiary hearing in this Court on those exhausted claims, Randolph argues that he diligently attempted to develop the factual basis of his claims in state court, but those efforts were frustrated by Mr. Welch's representation and by the trial court's refusal to allow Mr. Stretton to develop an additional record after Mr. Welch withdrew. He supports these allegations with citations to the record, as well as an appendix filed in connection with his habeas petition and proffer in support of an evidentiary hearing. (See Doc. 182 at 27-49; 144-46; Doc. 86.) It is also important to note that no hearing was held in connection with the PCRA proceedings and, therefore, no court has heard testimony from Mr. Welch, Mr. Thomas, or Mr. Stretton as to their representation of Randolph at various stages of the state court

proceedings.  A district court does not have authority under the federal habeas statutes, 28 U.S.C. § 2241 or § 2254, to remand a habeas corpus petition to a state court for an evidentiary hearing.  Keller v. Petsock, 853 F.2d 1122, 1129 (3d Cir. 1988).  Moreover, even considering the limitations from § 2254(e)(2) placed upon a district court in deciding whether to grant an evidentiary hearing in a § 2254 habeas proceeding, the Court concludes that it will grant Randolph's request for an evidentiary hearing on Claims I, III, and VIII.

Further, with respect to the remaining unexhausted and therefore procedurally defaulted Claims II, IV-VII, and IX-XV,[3] the Court will grant a hearing to address questions of procedural default, and whether Randolph overcomes any such default through proof that his convictions and death sentences represent a miscarriage of justice.  See Holloway, 355 F.3d at 716 (district court "has authority to grant a hearing on a petitioner's ability to establish cause to excuse a procedural default, and therefore § 2254(e)(2) is inapplicable to those hearings").

An appropriate Order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   April 30, 2019

---

[3] It is uncontested that no state proceeding remains available to Randolph in which he could make the current claims because a second and subsequent PCRA petition would be untimely and its claims would be barred as previously waived. See 42 Pa. Cons. Stat. § 9545(b)(1); 9543(a)(3); see also Lines v. Larkin, 208 F.3d 153, 163-66 (3d Cir. 2000) (discussing the procedural constraints on second and subsequent PCRA petitions).